# Illinois Official Reports

## Appellate Court

---

*In re Estate of Walker*, 2014 IL App (1st) 132565

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF MARY LOU WALKER, a Disabled Person (Mary Lou Walker, Petitioner-Appellant, v. Robert F. Harris, Cook County Public Guardian, as Limited Guardian of the Estate and Person of Mary Lou Walker, Respondent-Appellee). |
| District & No. | First District, Third Division<br>Docket No. 1-13-2565 |
| Filed | December 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of a petition under section 2-1401 of the Code of Civil Procedure seeking to vacate an order adjudicating petitioner as disabled and appointing a limited guardian for her estate and person was affirmed on appeal, since petitioner failed to present and support with facts the newly discovered evidence she claimed existed that would have prevented the trial court from entering the order in the underlying proceedings if it had known those facts and she did not establish that enforcing the appointment of the limited guardian would be "unfair, unjust, or unconscionable." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-P-6051; the Hon. Carolyn Quinn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Ilia Usharovich, of Wheeling, for appellant.

Office of the Cook County Public Defender, of Chicago (Robert F. Harris, Kass A. Plain, Alpa J. Patel, Nathan Goldenson, and Jean M. Agathen, of counsel), for appellee.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion. Justices Lavin and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Mary Lou Walker appeals the trial court's order denying her petition for relief under section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)) seeking to vacate an order adjudicating her disabled and appointing a limited guardian of her estate and person. Walker claims the trial court's order must be vacated because she was denied effective assistance of counsel during the underlying proceedings where her court-appointed counsel also served as her guardian *ad litem*, creating a *per se* conflict of interest. Walker also claims the lack of independent counsel and procedural deficiencies during the guardianship proceedings deprived her of due process. Finally, Walker claims her section 2-1401 petition should have been granted to prevent an "unfair, unjust, or unconscionable" result because she was not disabled after the order was entered. Finding no error in the denial of Walker's section 2-1401 petition, we affirm.

¶ 2                                  BACKGROUND

¶ 3    In September 2011, the North Shore Senior Center located in Northfield, Illinois, contacted the public guardian's office regarding Walker. On October 11, 2011, Dr. Geoffrey Shaw, a board-certified geriatric psychiatrist, evaluated Walker at the North Shore Senior Center and prepared a written independent medical evaluation. At the time of the evaluation, Walker was 72 years old. According to the evaluation, Walker's house was in violation of multiple housing codes and plans existed to demolish it. As a result of the housing code violations, Walker could not live in her house and was living in her car located in a grocery store parking lot. After her car was totaled in an accident, Walker began residing in motels.

¶ 4    Dr. Shaw identified Walker as suffering from dementia and experiencing deficits in her short-term memory with severely impaired executive functioning. Based on his evaluation of Walker and his expertise as a board-certified geriatric psychiatrist, it was Dr. Shaw's opinion to a reasonable degree of medical and psychiatric certainty that Walker was "totally incapable of making her own personal and financial decisions." Dr. Shaw noted that Walker did not believe she required a guardian. The written evaluation was filed with the trial court on October 17, 2011.

¶ 5    On October 17, 2011, the office of the Cook County public guardian filed a petition for the temporary appointment of a guardian of Walker's estate and person. The public guardian

indicated that Walker, who identified herself as a former practicing attorney, was a 72-year-old woman with a diagnosis of dementia. The petition stated Walker's home was uninhabitable and the Village of Northbrook obtained a no-occupancy order and was seeking demolition.[1] The petition also stated Walker had been living in her car with her longtime male companion until an accident "totaled" the car. On October 17, 2011, the trial court entered an order appointing Kathleen Meersman-Murphy as guardian *ad litem* for Walker. The order directed Meersman-Murphy to: (1) interview Walker; (2) inform her orally and in writing of the petition's contents and of her rights under section 11a-11 of the Illinois Probate Act of 1975 (755 ILCS 5/11a-11 (West 2010)); (3) elicit Walker's position regarding guardianship; and (4) file a written report.

¶ 6    Meersman-Murphy made several unsuccessful attempts to contact Walker before seeking the assistance of a social worker at North Shore Senior Center. On October 19, 2011, the social worker met Meersman-Murphy at the Best Western motel in Morton Grove where Walker had been staying. Meersman-Murphy knocked on the door of room 109 and Walker's male companion answered the door and invited her into the room to wait for Walker, who was indisposed. The motel room was very cluttered with boxes stacked from floor to ceiling on two of the walls and two dogs were also in the room.

¶ 7    After Walker came out of the bathroom, Meersman-Murphy introduced herself and explained the nature of her visit. Walker was properly attired, but she became increasingly more agitated as their conversation continued. Meersman-Murphy reviewed with Walker the "Statement of Rights and Petitions for Temporary and for Plenary Guardianship" orally and provided her with the statutorily required written statement of rights pursuant to section 11a-11. Walker refused to accept the written statement of rights or copies of the petition and threatened to rip them up. Walker acknowledged the hearing scheduled for the following day and Meersman-Murphy stressed the importance of her attending that court proceeding. Walker repeatedly told Meersman-Murphy she would hire her own lawyer, she did not want a court-appointed lawyer and she did not want the office of the public guardian to become her guardian. Meersman-Murphy informed Walker of Dr. Shaw's report and Walker claimed "he only asked stupid questions" and denied any difficulty answering his questions.

¶ 8    On October 20, 2011, the trial court held a hearing on the return of the petition for appointment of temporary guardian, and Walker was present at that hearing even though she had not yet been formally served with the petition. The trial court continued the matter for status on November 28, 2011, and directed Meersman-Murphy to meet with Walker personally or with counsel prior to the next hearing.

¶ 9    On October 24, 2011, Walker was personally served with the summons and a copy of the petition for appointment of guardian.

¶ 10    After the court hearing on October 20, Meersman-Murphy attempted to visit Walker again on November 27, 2011, following a message she left for Walker on November 25, informing her of the importance of her visit. Meersman-Murphy returned to the motel room that day and despite hearing noises from inside the room, no one answered the door. Meersman-Murphy left

---

[1]The legal proceedings relating to the condemnation and demolition of Walker's house are not part of this appeal, and those proceedings were pending when the trial court entered the order appointing a limited guardian of Walker's estate and person.

a note on the door advising Walker of the need for her to appear in court on the following day, and if she failed to appear, the court would likely appoint a guardian of her estate and person.

¶ 11 Meersman-Murphy filed a guardian *ad litem* report on November 28, 2011. After describing her visits with Walker and summarizing Dr. Shaw's findings, Meersman-Murphy stated Walker did not believe she needed a guardian and she did not want court-appointed counsel; instead, she planned to hire another attorney.

¶ 12 Walker failed to appear for the November 28, 2011 hearing. Meersman-Murphy again informed the trial court that Walker maintained she was going to hire an attorney but had not yet retained one. The trial court ordered Walker to appear in court with counsel on December 12, 2011; the order also provided that if Walker did not have counsel on that date, the trial court would appoint an attorney for her. The record reflects that a copy of the court's November 28, 2011 order was mailed to Walker on November 29, 2011.

¶ 13 At the next status hearing on December 12, Walker again failed to appear. Meersman-Murphy informed the trial court that Walker did not yet have an attorney, but Walker was requesting the trial court to appoint an attorney familiar with this area of the law. The trial court appointed Meersman-Murphy as Walker's counsel and continued the case to January 19, 2012. The record also reflects that a copy of the court's December 12, 2011 order was mailed to Walker on December 13, 2011.

¶ 14 Walker again failed to appear in court on January 19, 2012. Meersman-Murphy informed the trial court that Walker told her not to visit her again and she wanted a different attorney. The trial court did not believe it was appropriate to appoint another attorney without Walker present in court and specified that when Walker next appeared in court, the court would make it clear to her that another attorney would be appointed to represent her. The trial court entered an order continuing the matter to February 6, 2012, ordered Walker to appear in court on that date and directed that until then, Meersman-Murphy would act as Walker's counsel. On February 6, 2012, Walker failed to appear in court. The trial court continued the matter for status on February 22, 2012, and set the case for trial on April 24 and 25, 2012.

¶ 15 On February 22, 2012, Walker appeared in court for the status hearing. Meersman-Murphy informed the trial court that the public guardian's office had made a proposed settlement offer providing for the appointment of a limited guardian and Walker wanted an opportunity to read the offer more carefully. The trial court informed Walker that she had counsel appointed for her benefit. Walker reiterated that she did not want a public guardian and stated that she was not disabled yet. The trial court also informed Walker that if she did not agree to the proposed settlement, trial on the matter was set for late April. Walker asked the trial court, "What if I don't wish to proceed?" The trial court responded that Walker should let counsel know because the trial could be rescheduled. Walker asked, "So I would tell her if I did not want to have the trial?" and the court responded, "Absolutely." Walker said nothing during this hearing about her desire for the appointment of another lawyer.

¶ 16 On the scheduled trial date of April 24, 2012, Meersman-Murphy informed the trial court that the parties had reached a settlement and that Walker had executed the agreed order providing for the appointment of a limited guardian of her estate and person. Walker was not present in court, and the trial court noted her presence was waived because she executed the agreed order. The trial court entered the agreed order appointing the Cook County public guardian as the limited guardian of Walker's estate and person. The court also discharged Meersman-Murphy as Walker's counsel with leave to file a fee petition within 30 days. The

trial court further entered a "Statement of Right to Discharge Guardian or Modify Guardianship Order" notifying Walker she had been adjudged a disabled person, a guardian had been appointed for her and that she had the right to ask the court for assistance in modifying or discharging the guardian if she believed there was a change in her circumstances.

¶ 17 On May 22, 2012, Meersman-Murphy filed a petition for attorney fees totaling $5,676.75 for services rendered in her roles as guardian *ad litem* and counsel. In the petition, Meersman-Murphy stated she was appointed guardian *ad litem* on October 17, 2011 and acted in that capacity until January 19, 2012. She also stated the trial court appointed her as counsel on January 19, 2012 and she remained in that capacity until discharged on April 24, 2012.[2] Meersman-Murphy's representation in the fee petition that the trial court appointed her as counsel on January 19, 2012, appears to be an inadvertent error because the record clearly reflects the trial court appointed her as Walker's counsel on December 12, 2011. Moreover, Meersman-Murphy's invoice for professional services rendered demonstrates she was acting as counsel after December 12, 2011 because in an entry dated December 13, 2011, Meersman-Murphy sent Walker a letter and the court's December 12, 2011 order advising Walker she was appointed as her counsel, and another entry dated January 5, 2012 related to discovery. On June 19, 2012, the trial court entered an order granting attorney fees to Meersman-Murphy in the amount of $5,676.25 payable from Walker's assets for services rendered both as guardian *ad litem* and as counsel for Walker.

¶ 18 More than five months later on December 3, 2012, Walker through new counsel filed a section 2-1401 petition seeking to vacate the trial court's April 24, 2012 agreed order appointing a limited guardian of her estate and person. On December 10, 2012, the public guardian filed a motion to strike the petition because Walker's attorney had not filed an appearance, the petition was not supported with affidavits and was defective for lack of proper service. That same day, Walker filed her response to the motion to strike. On December 10, 2012, the trial court entered an order striking Walker's section 2-1401 petition for lack of proper service and failure to seek leave of court prior to filing the petition. The trial court also granted Walker's counsel leave to file an appearance for the limited purpose of filing a section 2-1401 petition.

¶ 19 On December 19, 2012, instead of filing a section 2-1401 petition, Walker filed a petition to vacate pursuant to section 2-1301 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1301 (West 2010)) asserting, in part, that the 30-day limitation for filing that motion was tolled because she was under a legal disability from the date of the order adjudicating her disabled. On January 25, 2013, the public guardian filed a response in opposition to Walker's petition arguing, in part, that the petition was untimely. On February 21, 2013, the trial court denied Walker's section 2-1301 petition.

¶ 20 On April 4, 2013, Walker filed a second section 2-1401 petition seeking to vacate the April 24, 2012 agreed order on the grounds that the trial court failed to both provide Walker with proper notice of the judgment and follow required statutory procedures relating to the disability petition and hearing. The public guardian opposed Walker's latest petition, asserting that no affidavits or any other material outside the record supporting Walker's claims were

---

[2]Although the trial court discharged Meersman-Murphy as counsel on April 24, 2012, the fee petition included an entry on April 27, 2012 relating to a letter Meersman-Murphy sent to Walker along with a copy of the trial court's April 24, 2012 order.

attached to the petition, no meritorious defense was stated and Walker failed to diligently present her alleged meritorious defense at the time of the original adjudication of disability.

¶ 21    On June 6, 2013, the trial court held a hearing on Walker's second section 2-1401 petition. Both Walker and her attorney were present, as were representatives from the public guardian's office. The trial court noted that attempted service on the public guardian by certified mail was not adequate because an individual other than the addressee signed for the mail and there was no affidavit of any personal service or service by publication. Despite the defective service, the court proceeded to address the merits of Walker's petition. The trial court found that Walker failed to demonstrate a right to relief under section 2-1401. The trial court stated Dr. Shaw's written evaluation supported a finding of disability despite Walker's claim that she was not disabled and further noted Walker's failure to provide any factual support for her claim that she was not disabled. The trial court also stated Walker's claims regarding the denial of due process and ineffective assistance of counsel were not causes of action supporting relief under section 2-1401 and Walker was not diligent in presenting any defense to the trial court in the underlying action. The trial court continued the matter to allow Walker to supplement the petition with a supporting affidavit regarding service.

¶ 22    On July 16, 2013, the trial court held another hearing on Walker's section 2-1401 petition. The public guardian advised that service had been effected. The trial court found that Walker failed to present facts demonstrating a meritorious defense, *i.e.*, that she was not disabled or in need of a guardian, and in the absence of those facts, there was no reason to believe that a new trial would yield a different outcome. Thus, the trial court denied Walker's section 2-1401 petition. Walker timely appealed.

¶ 23                                    ANALYSIS

¶ 24    On appeal, Walker contends the trial court erred in denying her section 2-1401 petition on the ground that the agreed order adjudicating her disabled and appointing a limited guardian of her estate and person was void because she was denied effective assistance of counsel and her due process rights were violated. Walker claims she was denied effective assistance of counsel because her appointed counsel had a *per se* conflict of interest by serving both as Walker's guardian *ad litem* and her appointed counsel. Walker asserts the trial court never discharged Meersman-Murphy as guardian *ad litem* and the *per se* conflict of interest violated her right to counsel resulting in a denial of due process. Walker asserts her due process rights were also violated because the trial court denied her counsel even though she requested appointment of counsel on December 12, 2011 and January 19, 2012. For these reasons, Walker contends her section 2-1401 petition should have been granted.

¶ 25    Section 2-1401 allows a court to vacate a final judgment after more than 30 days. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007) (citing 735 ILCS 5/2-1401 (West 2002)). Relief under section 2-1401 is provided to a petitioner who proves, by a preponderance of evidence, each of the following elements: "(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). A trial court may dismiss a section 2-1401 petition where, even taking as true its allegations, it fails to state either a meritorious defense or diligence in presenting the defense. *Vincent*, 226 Ill. 2d at 8; *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003). For purposes of section 2-1401, a meritorious defense involves an error of fact or the existence of a valid

defense that was not presented to the trial court. *Airoom*, 114 Ill. 2d at 222 (quoting *Brockmeyer v. Duncan*, 18 Ill. 2d 502, 505 (1960)); see *Pinkonsly*, 207 Ill. 2d at 565 (a meritorious defense involves an error of fact, not law). A section 2-1401 petition "requires the court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment." *Pinkonsly*, 207 Ill. 2d at 566. A meritorious defense and due diligence, however, need not be shown where the judgment or order is void. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002).

¶ 26     In *Vincent*, the Illinois Supreme Court held that a *de novo* standard of review applies where a trial court enters judgment on the pleadings or dismisses a section 2-1401 petition. *Vincent*, 226 Ill. 2d at 18. Following *Vincent*, decisions of this court have recognized that *Vincent* addressed a judgment that was being challenged for voidness, but did not involve the due diligence, meritorious defense and two-year limitation requirements that apply to other actions brought under section 2-1401. *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10 (citing *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 326-27 (2010), and *Blazyk v. Daman Express, Inc.*, 406 Ill. App. 3d 203, 206 (2010)). Those subsequent decisions of our court apply a *de novo* standard in reviewing whether a petitioner presented a meritorious defense, an issue of law, and apply the abuse of discretion standard in reviewing whether the petitioner complied with due diligence requirements, an issue dependent on findings of fact. *Id.* Under either standard, Walker's arguments fail.

¶ 27     Before addressing the merits of Walker's claims, we reject Walker's contention that the underlying judgment was *void* given that the trial court indisputably possessed both personal and subject matter jurisdiction. Walker acknowledges on appeal that she received a summons in the underlying proceedings, and the Probate Act confers jurisdiction upon the trial court to hear and adjudicate disability and guardianship matters. 755 ILCS 5/11a-3 (West 2010); *In re Estate of Steinfeld*, 158 Ill. 2d 1, 12 (1994). Consequently, because the underlying order was not void, Walker must establish a meritorious defense or claim and due diligence in presenting the meritorious defense or claim in the underlying proceeding and in bringing the section 2-1401 petition. *Sarkissian*, 201 Ill. 2d at 104-05. Walker failed to prove any of the elements necessary to the success of her section 2-1401 petition.

¶ 28     Walker claims she is entitled to relief under section 2-1401 because she was denied effective assistance of counsel. Walker frames her argument as an ineffective assistance of counsel claim, but we must clarify that the concept of "effective assistance of counsel" is a constitutional right afforded to defendants in criminal proceedings. *Pinkonsly*, 207 Ill. 2d at 567. In contrast, guardianship proceedings are governed by statutory authority, and the Probate Act provides that the trial court may appoint counsel if it finds the respondent's interests are best served by the appointment and counsel shall be appointed upon a respondent's request. 755 ILCS 5/11a-10 (West 2010). Thus, the constitutional right to counsel and the right to "effective assistance of counsel" that are paramount in criminal proceedings are not applicable to the statutory guardianship proceedings presented here. Moreover, the law is well established that ineffective assistance claims are not properly raised in section 2-1401 proceedings because such claims do not challenge the *factual* basis for the trial court's judgment. *Pinkonsly*, 207 Ill. 2d at 567. Although Walker erroneously labels her claims as "ineffective assistance of counsel," she is really arguing that the individual appointed to represent her interests during the guardianship proceedings served in a prohibited dual role of guardian

*ad litem* and counsel creating a *per se* conflict of interest. Consequently, we must determine if Meersman-Murphy simultaneously acted as both guardian *ad litem* and counsel.

¶ 29    To establish that Meersman-Murphy served in a prohibited dual capacity, Walker relies on the seminal case of *People v. Austin M.*, 2012 IL 111194, but such reliance is misplaced. In *Austin*, the trial court did not expressly appoint an attorney as a minor's guardian *ad litem*, but our supreme court found that defense counsel acted more as a guardian *ad litem* than as a defense attorney. *Id.* ¶ 104. The *Austin* court held that "the interests of justice are best served by finding a *per se* conflict when minor's counsel in a delinquency proceeding *simultaneously* functions as both defense counsel and guardian *ad litem*." (Emphasis added.) *Id.* ¶ 86. The court reasoned a *per se* conflict of interest arises because a guardian *ad litem* advocates the best interests of the minor (which may or may not coincide with the wishes of the minor) and presents recommendations to the court consistent with that duty whereas defense counsel's obligations run solely to the minor client. *Id.* ¶¶ 69, 77, 85, 86. Because the *Austin* court found that counsel labored under a *per se* conflict, the court reversed the minor's adjudication and remanded the matter for further proceedings. *Id.* ¶ 106.

¶ 30    *Austin* is distinguishable because, here, Meersman-Murphy never simultaneously acted as Walker's guardian *ad litem* and attorney. The record reveals the trial court appointed Meersman-Murphy as Walker's guardian *ad litem* on October 17, 2011 and as her attorney on December 12, 2011. During the November 28, 2011 and December 12, 2011 status hearings, Meersman-Murphy introduced herself as Walker's guardian *ad litem*. During the January 19, 2012 status, Meersman-Murphy introduced herself as court-appointed counsel, previously guardian *ad litem.* During the April 24, 2012 status, Meersman-Murphy again introduced herself as court-appointed counsel for Walker. In response to the trial court's question, Meersman-Murphy responded "yes" when asked whether she was the *original* guardian *ad litem.* Contrary to Walker's claims, Meersman-Murphy's representations as reflected in the transcripts of these proceedings establish she did not simultaneously serve as Walker's guardian *ad litem* and counsel. The fact that the trial court did not enter a specific order terminating Meersman-Murphy's appointment as guardian *ad litem* at the time she was appointed to act as Walker's counsel is insufficient to support Walker's conflict argument when the record otherwise reflects that both Meersman-Murphy and the court understood that she was acting in two different capacities. Moreover, Walker points to no authority precluding an individual from serving as counsel following the termination of the role as guardian *ad litem*. Finally, Walker fails to clearly specify with supporting facts what actions Meersman-Murphy allegedly took as guardian *ad litem* after the trial court appointed her as Walker's counsel.

¶ 31    It is undisputed that Meersman-Murphy initially acted in the capacity of guardian *ad litem* as evidenced by the "report of guardian *ad litem*" she completed, filed and discussed during the November 28, 2011 status hearing. Meersman-Murphy reported that Walker did not believe she needed a guardian and stated she did not want court-appointed counsel; instead, she planned to hire another attorney. As Walker acknowledges on appeal, Meersman-Murphy did not take a position on the necessity of guardianship. But Meersman-Murphy did report her observations of Walker, Dr. Shaw's findings and Walker's position regarding the guardianship. Walker asserts that because an individual serving as a guardian *ad litem* may be required to testify during the hearing regarding any issue presented in the report, Rule 3.7 of the Illinois Supreme Court Rules of Professional Conduct (Ill. R. Prof. Conduct (2010) R. 3.7

(eff. Jan. 1, 2010)) is implicated. Rule 3.7 generally precludes a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness." Walker reasons that Meersman-Murphy, as guardian *ad litem* and later her counsel could have been called as a witness at trial, thus violating Rule 3.7. Here, as the trial court noted, an agreed order was entered and there was no trial, which also eliminated the possibility that Meersman-Murphy would be required to testify as to matters in the report. Thus, Rule 3.7 was inapplicable and the potential conflict identified by Walker was an insufficient basis to support relief from the agreed order under section 2-1401.

¶ 32    Walker also claims the trial court erred in denying her section 2-1401 petition because she was denied due process during the underlying proceedings. Walker claims her due process rights were violated because she was denied her right: (1) to be represented by counsel; (2) to a guardian *ad litem*; and (3) to counsel free from conflict. Walker further claims the trial court failed to follow the proper procedures because the trial court: (1) appointed a limited guardian without her presence in court; (2) failed to inform her of her rights to seek modification or to petition for termination of adjudication of disability; (3) erred in finding clear and convincing evidence of her disability; (4) erred in relying on Dr. Shaw's report; (5) failed to adequately inquire into her functioning or extent of impairment; and (6) failed to factually state the reasons supporting its appointment of a guardian. Because of these procedural deficits, Walker contends the agreed order appointing a limited guardian must be vacated.

¶ 33    Walker's due process claims do not entitle her to relief under section 2-1401. The record reveals that Walker, through Meersman-Murphy, requested the appointment of counsel on more than one occasion, but when afforded multiple opportunities to appear in court with counsel of her choosing, she failed to do so. Specifically, during the November 28, 2011 and January 19, 2012, status hearings when Walker was not present in court, the trial court declined to appoint new counsel in Walker's absence and ordered Walker to appear in court to determine if she had retained an attorney or if the court should appoint one for her. When Walker appeared in court at the next hearing date on February 22, 2012, she objected to the appointment of a public guardian but did not express any dissatisfaction with Meersman-Murphy as her attorney or request the court to appoint a different attorney. Thus, the trial court acted appropriately to afford Walker the opportunity to retain counsel of her own choosing and when Meersman-Murphy informed the court that Walker desired the appointment of another attorney, the court was willing to accommodate Walker's request. On this record, when Walker appeared on February 22, 2010, and when Meersman-Murphy informed the court that the public guardian had made an offer that Walker wanted to consider and Walker did not insist on the appointment of counsel other than Meersman-Murphy, the trial court could justifiably assume that Walker no longer desired substitute counsel.

¶ 34    Walker's other alleged procedural deficiencies relating to the hearing to appoint a guardian also do not entitle her to relief under section 2-1401. Regarding her lack of presence in court when the trial court appointed the limited guardian, Walker correctly refers to section 11a-11(a) of the Probate Act, which states in relevant part that "unless excused by the court upon a showing that the respondent refuses to be present or will suffer harm if required to attend, the respondent shall be present at the hearing." 755 ILCS 5/11a-11(a) (West 2010). During the scheduled April 24, 2012 trial date, Meersman-Murphy presented the trial court with an agreed order, which Walker executed, appointing the public guardian as the limited guardian of Walker's estate and person. The trial court acknowledged Walker was not present

during the hearing, but deemed her presence waived because she executed the agreed order and therefore, her presence was unnecessary. We agree with the trial court because on the scheduled trial date, the trial court merely adopted the agreed order Walker previously executed. We note the trial court also informed Walker during the February 22, 2012 status, in response to Walker's inquiry regarding the possibility that she might not want to proceed with the trial, that she should inform her counsel if she did not wish to go forward. Therefore, given Walker's execution of the agreed order (which she does not deny), the trial court properly entered that order in Walker's absence.

¶ 35     Moreover, paragraph 11 of the agreed order addressed the required statutory notice regarding modification of the appointment order or petition for termination of adjudication of disability and directed the trial court's clerk to mail the notice to Walker. Walker's signature appears immediately below this paragraph giving rise to the reasonable presumption she acquiesced to the mailing of the required notice in light of her absence at the hearing. Regardless of the method of delivery of the notice to Walker, she was informed about her rights to seek modification of guardianship or termination of the adjudication of disability.

¶ 36     Walker further asserts the trial court erred procedurally when it failed to enter an order listing its factual findings supporting guardianship. Although the trial court did not separately enter such an order, the trial court stated the basis for its findings during the April 24, 2012 hearing and the agreed order listed the reasons why the court found clear and convincing evidence that Walker was disabled and required appointment of a limited guardian of her estate and person. The court's findings were based in part on Dr. Shaw's report. Walker articulates no compelling reason why the trial court should not have relied on Dr. Shaw's report. The report was based on Dr. Shaw's evaluation of Walker and his expertise as a board certified geriatric psychiatrist. Section 11a-2 of the Illinois Probate Act (755 ILCS 5/11a-2 (West 2010)) defines a "disabled person" as "a person 18 years or older who (a) because of mental deterioration or physical incapacity is not fully able to manage [her] person or estate." Under section 11a-3(a) of the Illinois Probate Act (755 ILCS 5/11a-3(a) (West 2010)), "the court may adjudge a person to be a disabled person, but only if it has been demonstrated by clear and convincing evidence that the person is a disabled person as defined in Section 11a-2." Upon an adjudication that a person is disabled, the trial court may appoint a guardian of his person and of his estate. *Id.* Dr. Shaw's report supported the trial court's finding that Walker was a "disabled person" based on clear and convincing evidence and upon that finding, the trial court had the power to appoint a guardian of her person and estate. Walker gives us no reason to find that Dr. Shaw's report was not credible or reliable. Because we find no procedural errors denying Walker due process, we must reject Walker's claim that those procedural errors entitled her to relief under section 2-1401. Even if we were to assume procedural deficiencies relating to the disability proceedings existed, those requirements are procedural, not jurisdictional and the guardianship order was still a valid order. *In re Estate of Steinfeld*, 158 Ill. 2d at 16.

¶ 37     Lastly, Walker argues the trial court should have invoked its equitable powers to prevent enforcement of the order appointing the limited guardian, the enforcement of which would be "unfair, unjust and unconscionable." Given our finding that all of the claims Walker raised as a basis for relief under section 2-1401 lack merit, there equally is no basis to vacate the agreed order on general equity principles.

¶ 38    In sum, Walker failed to clearly set forth and support with facts what the newly discovered evidence is that would have prevented the trial court from entering the order in the underlying proceeding had it known those facts. See *Blutcher v. EHS Trinity Hospital*, 321 Ill. App. 3d 131, 135-36 (2001) (noting that the purpose underlying a section 2-1401 petition is to allow the petitioner to raise in the trial court facts that are absent from the record, but, if the facts had been known, the trial court would not have entered the judgment that it did in the underlying proceedings). Walker has not established that enforcing the appointment of the limited guardian of her estate and person would be "unfair, unjust, or unconscionable." Consequently, Walker failed to meet the requirements for relief under section 2-1401 and the trial court did not err in denying her petition.

¶ 39                                    CONCLUSION

¶ 40    For the reasons stated, the trial court's ruling denying Walker's section 2-1401 petition is affirmed.

¶ 41    Affirmed.